**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grace Kaoru Black, | No. CV-23-08618-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On January 19, 2021, Plaintiff Grace Black filed applications for Social Security Disability Insurance Benefits and Disabled Widow's Benefits. (Administrative Record ("AR.") 80–81.) Black alleges her disability began on January 6, 2020. (AR. 14.) After an administrative hearing, the Administrative Law Judge ("ALJ") found Black not disabled and accordingly issued an unfavorable decision on September 30, 2022. (AR. 27.) The Appeals Council denied review of the decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (AR. 1.) Black now seeks review of the Commissioner's decision under 42 U.S.C. § 405(g).

## I.    Legal Standard

The district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007). The Court will review the Commissioner's final decision by examining the existing administrative record and asking whether it contains sufficient evidence to support the agency's factual determinations. 42. U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). In this context, substantial evidence is "more than a mere scintilla" and means "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. This is a highly deferential standard of review. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ uses a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof for the first four steps, but the burden shifts to the Commissioner at step five. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). First, the ALJ determines whether the claimant has engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant's alleged impairment is sufficiently severe as to limit their ability to work. *Id.* § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant then qualifies as disabled. If not, the ALJ moves to the fourth step where he assesses the claimant's residual functioning capacity ("RFC") and determines whether the claimant could perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is not able to perform past work, then the ALJ proceeds to the fifth and final step: determining whether the claimant can perform any other relevant work in the national economy based on the claimant's age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the ALJ determines that the claimant is unable to perform other work, then the claimant is disabled. *Id.*

## II.    Analysis

Black contends that the ALJ erred (1) when he discounted Black's symptom testimony and (2) when he rejected Dr. Scott Boggs' medical opinion.

### a. Black's Symptom Testimony

The ALJ performs a two-step analysis when evaluating a claimant's pain and symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015.

To weigh a claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, including the claimant's reputation for truthfulness, testimony from physicians about the severity of their symptoms, any inconsistencies in their testimony or conduct, and any inadequately explained failure to seek treatment or to follow treatment. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ does not have to "clearly link his determination to those reasons"; rather, he need only provide substantial evidence for rejecting the claimant's testimony. *Lewis*, 236 F.3d at 512.

At the hearing, Black testified about problems with her lower back, left knee, and numbness in her feet, which interfered with her ability to walk, sit, stand, and balance. (AR. 45–46.) She also testified about her hand limitations caused by carpal tunnel syndrome. (AR. 40, 43–44.) Additionally, Black testified to her vision impairment—that she could not read or drive with her left eye. (AR. 39–40.)

The ALJ found that Black satisfied the first prong of the test because her impairments could reasonably be expected to cause some of her symptoms. (AR. 21.) At step two, however, the ALJ discounted her testimony about "the intensity, persistence, and limiting effects of these symptoms" because they "were not entirely consistent with the medical evidence and other evidence in the record." (AR. 21–22.)

Black contends that the ALJ improperly discounted her testimony by failing "to explain how one set of findings canceled out the significance of other findings that

supported and were consistent with Black's symptom testimony." (Doc. 12 at 10.) The Court disagrees.

First, the ALJ reasonably discounted Black's testimony regarding her lower back, left knee, and numbness in her feet. (AR. 22.) The ALJ cited two examinations demonstrating that Black's back was normal. (AR. 1347, 1491.)  The ALJ also found that she had normal, gait, posture, movement, and strength. (AR. 837, 849, 856, 1073, 1080, 1155, 1323, 1330, 1332, 1342, 1374, 1491.) On the other hand, the ALJ acknowledged that Black suffered from diminished deep tendon reflexes in her lower extremities, reduced sensation, and abnormal balance. (AR. 864, 1088, 1330, 1339, 1342.) He further noted that while the diagnostic images of Black's knee showed narrowing of her joint, her pain was well-managed with medicine and physical therapy. (AR. 867, 1095, 1301.) Black, however, had been discharged from physical therapy after two consecutive no-shows. (AR. 1301.) On balance, the ALJ found that this evidence merited limiting her to the light exertional level. (AR. 22.) This analysis and balancing of Black's testimony with medical evidence in the record and with Black's own conduct constitutes specific, clear, and convincing reasons for the ALJ to discount Black's testimony.

Second, the ALJ reasonably discounted Black's testimony regarding her hand limitations. The ALJ noted that Black did in fact have moderate to severe bilateral carpal tunnel syndrome but found no evidence in the record that she continued to receive treatment for this impairment after she was discharged from physical therapy in July of 2020. (AR. 22, 569.) *See Orn*, 495 F.3d at 636 (An ALJ may consider "unexplained, or inadequately explained, failure to seek treatment" as undercutting symptom testimony.). And subsequent examinations revealed that she had normal sensation and movement of her upper extremities. (AR. 1323, 1491.) Accordingly, the ALJ adequately discounted Black's symptom testimony relating to her hand limitations. (AR. 22.)

Third, the ALJ properly considered the medical evidence in the record when evaluating Black's symptom testimony about her vision. While Black did have diabetic retinopathy, the ALJ cited evidence in the record that her vision had improved considerably

since getting treatment. (AR. 664, 685, 690, 717, 1296, 878, 1133.) These records of her vision improvement constitute substantial evidence for the ALJ to discount Black's testimony. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023).

Accordingly, the ALJ relied on substantial evidence in discounting Black's testimony about the intensity, persistence, and limiting effects of her symptoms.

**b. Dr. Boggs' Medical Opinion**

For claims filed on or after March 27, 2017, the ALJ no longer needs to assign specific evidentiary weight to any medical opinion. 20 C.F.R. § 416.920c(a). Now, the regulations require the ALJ to consider all medical opinions and articulate how persuasive he finds them. *Id.* § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ must "explain how [he] considered the supportability and consistency factors in reaching those findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 416.920c(a). Supportability is the extent to which a medical source supports his medical opinion by explaining the relevant medical evidence. 20 C.F.R. § 416.920c(c)(1). Consistency refers to the extent to which a medical opinion is consistent with the evidence from other medical sources and non-medical sources in the claim. *Id.* § 416.920c(c)(2). The ALJ may also consider treatment relationship, the doctor's specialization, and whether the source is familiar with other evidence in the claim. *Id.* § 416.920c(c)(3–5).

In March of 2022, Black's podiatrist, Dr. Boggs, completed a medical assessment of Black's ability to do work-related activities. (AR. 1334–35.) He found that Black had the following limitations which precluded Black's ability to work an eight-hour work day: she could sit for more than two but less than three hours; she could lift more than fifteen pounds but less than twenty; she could stand or walk for more than two hours but less than three; she could carry more than fifteen pounds but less than twenty; she must alternate between sitting, standing, and walking every forty-six to sixty minutes; and she needs to rest twenty minutes to an hour at a time. (AR. 1334–35.) He opined that these limitations would result in her being moderately off task. (AR. 1334–35.)

In assessing Dr. Boggs' medical opinion, the ALJ did not properly explain the supportability factor. The supportability factor contemplates the extent to which the medical source explained his opinion or conclusion by providing or citing objective supporting evidence. *Woods*, 32 F.4th at 791–92. The ALJ cited that Dr. Boggs' restrictions were not supported by his own notes, "which indicated appropriate muscle tone and strength; full range of motion without pain, crepitation, or instability of the bilateral lower extremities; and no evidence of edema, erythema, ecchymosis, open lesions, maceration, or signs of bacterial of fungal infection." (AR. 25.) To bolster this claim, the ALJ cited two exhibits: one from Dr. Boggs' March 2021 exam of Black and a second from Dr. Robert Bazaco's exam of Black in March of 2022. (AR. 25.) Because the supportability factor focuses on how the treating physician's notes support his own assessment, the Court does not examine Dr. Bazaco's findings.

Dr. Boggs' notes from the March 2021 exam may have listed several normal findings, but they also showed several abnormalities. For instance, Dr. Boggs noted that "there is pain on palpation to the lateral side of the right foot" and "there is more pain with eversion against resistance and pressure." (AR. 837.) Dr. Boggs also judged that Black had uncontrolled diabetic neuropathy and "other specified disorders of bone, ankles, and footright." (AR. 837.) Further notes reveal that Dr. Boggs completed another exam in March of 2022—on the same day he completed a medical assessment of Black's ability to work—where he found that Black was "somewhat unstable with ambulation second to sensation and vision" and that her balance was abnormal. (AR. 1330.) Further still, on his medical assessment of Black's ability to work, Dr. Boggs explained "the patient has balance, position complication because of her diabetic neuropathy and loss of feeling in her feet." (AR. 1335.) But the ALJ failed to grapple with those findings. While it's the ALJ's job to weigh the evidence, he cannot cherry-pick evidence to support an unfavorable decision. *Moreno v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00319-PHX-DLR, 2023 WL 4926258, at *4 (D. Ariz. Aug. 2, 2023); *Garrison*, 759 F.3d at 1017 n.23.

However, the ALJ did properly explain the consistency factor. Proper analysis of

the consistency factor requires the ALJ to evaluate the extent to which Dr. Boggs' opinion is consistent with the medical or nonmedical evidence elsewhere in the record. *See* 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ commented that Dr. Boggs' opinion "was not consistent with the longitudinal medical evidence of record which typically indicated normal, gait, posture, movement, and strength." (AR. 25.) The ALJ then cited several exhibits: Dr. Bazaco's notes from exams conducted in December 2020, June 2020, and December 2021; Dr. Muhammad Nayer's notes from an exam conducted in January 2020; Dr. Michael Treiman's notes from December 2018; Dr. David Freedman's notes from August 2022; and three sets of Dr. Boggs' notes from various exams conducted between 2021 and 2022. (AR. 837, 849, 856, 1073, 1080, 1155, 1323, 1330, 1332, 1342, 1374, 1491.) While there was evidence in these exam notes that indicated Black suffered from movement and strength issues in both her upper and lower extremities, these notes also demonstrate several findings that were essentially normal. Under these circumstances, the Court will not disturb the ALJ's inconsistency finding. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (finding that "where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld"). Because the ALJ cited evidence of Black's normal gait, posture, strength, and movement, the ALJ met its burden on the consistency factor.

While the ALJ did cite substantial evidence for the consistency factor, it failed to do so for the supportability factor. Because the ALJ inadequately addressed the degree to which Dr. Boggs' supported his own opinion in his treatment notes, the Court reverses the ALJ's decision.

### III.    Remedy and Conclusion

Black argues that the Court should remand her claim for payment of benefits. (Doc. 12 at 17.) A remand for payment of benefits is a rare exception to the ordinary remand rule. *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). To remand for payment, the court engages in a three-part test where each element must be satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2)

the ALJ has failed to provide legally sufficient reasons for rejecting evidence . . . ; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Black falters at the first element: additional proceedings would in fact serve a useful purpose. There are some questions as to the persuasiveness of Dr. Boggs' assessment, which further proceedings could help resolve.

**IT IS ORDERED** that the ALJ's decision (AR. 54–70) is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Dated this 19th day of February, 2025.

Douglas L. Rayes
Senior United States District Judge